# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 4, 2011

No. 09-60254

Lyle W. Cayce
Clerk

MARIE IVES GREGOIRE,

Petitioner

v.

ERIC H. HOLDER, JR., U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before REAVLEY, JOLLY, and STEWART, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Marie Gregoire petitions for review of a Board of Immigration Appeals order reversing an Immigration Judge's decision, *sua sponte*, to reopen her motion for application of asylum and withholding of removal, in order to establish that exceptional circumstances caused her not to appear at a hearing, which resulted in her being removed *in absentia* to Haiti, her native country. The BIA found, and we agree, that a specific statutory provision barring a motion to reopen overrides an immigration judge's general authority to reopen *sua sponte*. Accordingly, Gregoire's petition for review is DENIED.

No. 09-60254

I.

Marie Gregoire, a 32-year-old native of Haiti, entered the United States through Miami, Florida on May 1, 1989, without having been admitted or paroled by an immigration officer after inspection. On August 14, 1997, Gregoire submitted to the INS an application for asylum in the United States and withholding of removal to Haiti, claiming that she would be subject to harm if required to return to Haiti because of her father's connection with the regime of Francois Duvalier.

On October 21, 1997, the Government issued a Notice to Appear and placed Gregoire in removal proceedings for violation of 8 U.S.C. § 1182(a)(6)(A)(I), as an alien present in the United States without having been admitted or patrolled. The 1997 Notice warned Gregoire that if she failed to "attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence."

During a January 26, 1998 hearing, Gregoire admitted to the allegations in the Notice to Appear but indicated that she would seek relief from removal by applying for asylum and withholding of removal. After a merits hearing on June 30, 1998, the Immigration Judge ("IJ") reserved his decision because of the Haitian Refugee Immigration Fairness Act of 1998 (HRIFA). On November 9, 1999, Gregoire filed an application to adjust her status pursuant to HRIFA. The application was incomplete and the IJ decided to continue the case so that further documentation and position statements could be submitted by the parties. He set the date and time of the next hearing at March 2, 2000, at nine o'clock in the morning and then gave the following oral warning to Gregoire:

> Ms. Gregoire, you must come back to my court on March the 2nd,
> the year 2000 at 9 o'clock in the morning. If you fail to appear as
> scheduled, I'll deem that you've abandoned all relief from removal

2

No. 09-60254

and will issue an order removing you from the United States in your absence.

Should that failure to appear be without exceptional circumstances beyond your control, you'd be further ineligible for certain forms of discretionary relief for a period of 10 years thereafter, including cancellation of removal, voluntary departure, and different forms of adjustment of status.

Gregoire was asked whether she understood what the IJ had said to her; she replied that she did. Written notice of the new hearing date, containing a similar warning of the consequences of failing to appear, was provided to Gregoire's counsel.

When the March 2, 2000 hearing was called to order, Gregoire was not present. Her counsel told the IJ that he did not know why she was not present. The IJ proceeded *in absentia* and ordered that Gregoire be removed to Haiti. Gregoire claims that although she was not at the hearing, she arrived minutes late.

On May 31, 2002, Gregoire filed a motion to reopen, asserting that her failure to attend the March 2, 2000 hearing was due to her daughter's illness, which included fever and a severe cough and required a doctor's visit. On July 26, 2000, the IJ issued an order denying Gregoire's motion because it was not accompanied by the required filing fee. The IJ also considered the motion on its merits and found that it did not raise "exceptional circumstances," because Gregoire's husband was available to—and did— accompany the child to the doctor and the documentation of the illness did not show it to be truly serious.

Gregoire was taken into custody on September 13, 2006, in preparation for removal to Haiti. On July 11, 2007—nearly seven years after the July 26, 2000 order denying reopening and rescission of the *in absentia* removal order—Gregoire filed a motion to reopen. Gregoire asserted, among other claims, that she had received ineffective assistance from counsel. On January 31, 2007,

No. 09-60254

the IJ issued an order granting reopening of Gregoire's removal proceedings. He *sua sponte* reopened the proceedings because there had been no adjudication on the merits of her original application for asylum and there was a new basis for a visa petition.[1]  After hearing testimony, the IJ found that Gregoire's removal would create extreme hardship because her spouse was a United States citizen. He granted Gregoire's adjustment of status application and admitted her to the United States as a lawful permanent resident.

DHS appealed to the Board of Immigration Appeals (the "BIA"), contending that the IJ erred by reopening *sua sponte* and by finding "truly exceptional circumstances" warranting reopening.  On March 12, 2009, the BIA reversed the IJ's *sua sponte* grant of reopening because Gregoire's second motion to reopen was untimely and she had failed to demonstrate exceptional circumstances excusing her failure to appear at the hearing.  The BIA further found that an alien who fails to appear for a reason other than "exceptional circumstances" is not eligible for adjustment of status for a period of ten years following the date of entry of the final order of removal.  Accordingly, because ten years had not passed since the IJ's March 2, 2000 order of removal, the BIA found that Gregoire was not eligible for adjustment of status.

On the same day that the BIA issued its order, Gregoire filed a motion for reconsideration arguing that an IJ's power to grant reopening *sua sponte* is not affected by failure to file a motion on time.  She also filed a Petition for Review with this court, which was held in abeyance pending her motion for reconsideration.  In a December 18, 2009 order, the BIA denied Gregoire's

---

[1] On April 20, 2006, Gregoire's application was approved for a preference visa based upon her husband becoming a naturalized citizen of the United States.

No. 09-60254

motion.   Gregoire filed an additional Petition for Review with this court on January 6, 2010.[2]

## II.

Gregoire petitions for review of the BIA's holding that the IJ erred in *sua sponte* reopening her claim.[3]   An alien may be ordered removed *in absentia* if: (1) the alien fails to appear for his scheduled hearing despite receipt of a proper hearing notice; and (2) the Government establishes that the alien is removable. *See* 8 U.S.C. § 1229a(b)(5)(A).   Such a removal order may be rescinded only "upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances."   8 U.S.C. § 1229a(b)(5)(C)(i).   Gregoire does not dispute the BIA's finding that her second motion to reopen was untimely filed. She instead contends that the IJ's *sua sponte* authority to reopen proceedings "at any time" trumps the statutory requirements for rescinding an *in absentia* order. *See* 8 C.F.R. § 1003.23(b)(1).   Thus, we are asked to resolve the tension between two statutes:  one of which permits a motion to reopen *only* if it is filed within 180 days, and the other which grants the IJ *sua sponte* authority to reopen proceedings at any time.

We, like most circuits, have found that we do not have jurisdiction to review the BIA's decision declining to exercise its *sua sponte* authority to reopen a case.   *See, generally, Enriquez-Alvarado v. Ashcroft,* 371 F.3d 246, 249 (5th Cir.

---

[2] Gregoire filed another motion to reopen with the BIA on April 9, 2010.   We denied Gregoire's request to hold these appeals in abeyance pending the BIA's disposition of her April 9 motion.

[3] Gregoire also asserted that she was never given an opportunity to appeal the IJ's denial of her motion to reopen on the basis that counsel rendered ineffective assistance.   This assertion is incorrect because in its decision dated March 12, 2009, the BIA stated that it agreed with the IJ's conclusion that Gregoire's second motion to reopen was untimely filed, and that the untimely filing could not be excused on the basis of ineffective assistance of counsel nor exceptional circumstances.

2004) (holding that there is no jurisdiction to review an IJ's decision not to reopen removal proceedings *sua sponte* because there is no meaningful standard against which to judge the exercise of discretion in making such a decision). We have not, however, held that the BIA lacks jurisdiction to review an IJ's decision to *sua sponte* reopen a removal proceeding and rescind an *in absentia* order. *Id.* at 249-50.

We have previously faced a similar question, when asked to resolve the tension between a regulation allowing the BIA to grant reopening *sua sponte* "at any time" and a regulation that prohibited a motion to reopen by a deported alien. *See Navarro-Miranda v. Ashcroft*, 330 F.3d 672, 675 (5th Cir. 2003). The issue in that case was whether the general authority to grant *sua sponte* a motion to reopen trumped a specific regulation prohibiting a motion to reopen. We found that it did not, and held that the specific prohibition on the motion to reopen after deportation overrode the "at any time" authority for *sua sponte* reopening. *Id.* at 676.

In *Navarro-Miranda*, the petitioner was deported to Mexico and, from there, moved for the BIA to reopen his removal proceedings *sua sponte*. The BIA found that its *sua sponte* power to reopen was abrogated by 8 C.F.R. § 3.2(d)'s requirement that an alien not be deported at the time a motion to reopen is filed. The BIA thus denied Navarro-Miranda's motion, finding that it lacked jurisdiction to consider the motion to reopen by a person who has already been deported. *Id.* at 675. Navarro-Miranda filed a petition for review, arguing that the BIA should have *sua sponte* reopened his removal proceedings. *Id.*

We held that "the BIA's reasoning that the prohibition on motions to reopen . . . overrides its . . . power to reopen on its own motion is a reasonable interpretation of the language of these two regulations." *Id.* at 676. The court reasoned that, given the "fundamental rule of statutory interpretation, specific provisions trump general provisions," the Board's interpretation that the specific

6

No. 09-60254

prohibition on a motion to reopen where the alien has been deported trumped the general provision granting the BIA the authority to sua sponte reopen removal proceedings. *Id.* The court thus denied Navarro-Miranda's petition for review of the BIA's order denying his motion to reopen his removal proceedings. *Id.* at 677.

In this case, the BIA similarly held that the specific statutory requirements for rescinding an order entered *in absentia* trump the general authority granted to an IJ. Following *Navarro-Miranda,* we find the interpretation of the BIA to be reasonable. Accordingly, the petition for review is

DENIED.